Yes Your Honor, thank you and good morning. May it please the court, I'm Jennifer Huebman from the San Francisco Public Defender's Office on behalf of the petitioner Mario Ixchop-Perez who's watching today by video. I would like to reserve two minutes for rebuttal. Mr. Ixchop was called away from his wife's hospital bed where she was in labor with their first child under the false pretense that a probation officer just needed his signature. Instead he was arrested by I.C.E. leaving his wife no indication of what had happened. The series of events that culminated in this arrest revealed a sequence of actions by I.C.E. officers that was so fundamentally unfair at every step it shocks the conscious and requires suppression of his subsequent admission of alienage or termination under the regulatory violations. Counsel, this is a very significant and unfortunate factual situation but can you give me the case or cases that you rely upon to show that this was an egregious violation of the Fourth Amendment because as you know that's what you have to do to get that applicable to an immigration case. What's your answer to that? Yes your honor there are two separate egregious Fourth Amendment violations here. First the first one is derived from the warrantless search of Mr. Ixchop's home and there the although his sister Cecilia did consent to the I.C.E. officers entry to the home it was under an improper rules under this court's case of U.S. v. Boston. Let's assume for a moment just for purposes of discussion that the entry into the home was improper. I'm not sure it was but let's assume that for a moment. What are you seeking to suppress as a result of that entry? Mr. Ixchop's alien admission of alienage after he was arrested because the search the improper search of the home which has been found by this court to be an egregious Fourth Amendment. I'm asking I've assumed that you don't have to argue it for the moment I'm not sure you're right but I've assumed it. What case do we have that says if there's what cases anybody have I couldn't find one that says if there's an improper search and as a result of that search somebody learns where someone is the subsequent arrest is illegal. The that his location the fact of his location is a an immediate fruit of that search and then the I.C.E. officers proceed to that's your argument I understand that's your argument it's probably a pretty good argument if we not in egregious land but tell him so tell me as Judge Smith asked at the beginning what case we have that says that discovering someone's location through an improper search invalidates the arrest. I think that it's a question of the attenuation I don't have a case site for you. I'm not talking about attenuation just saying is there a case wholly apart from attenuation let's outside in the shed and so they go find him in the shed and arrest him there. What case do we have that says that that what an arrest becomes illegal because the government through an improper search learned where the person arrested was. Your Honor my position is that the Fourth Amendment violation and the regulatory violation from that search are sufficient to suppress the alienage I'm not arguing that the that that it that it is the Fourth Amendment violation is egregious and the regulatory violation do warrant both the suppression and the termination of the case. You say the regulatory violation you mean that the special places in this case the hospital is that what you're talking about? Your Honor in addition to the sensitive location memorandum being there is a regulation that protects against warrantless entry into the home which is 8 CFR 287.8 F2 and there is a regulation protecting against an arrest without probable cause. Can we focus on this well there's also a regulation that prohibits arrest without a warrant. Yes your honor. In the absence of in the Indeed your honor that regulation was also violated here. Okay if that regulation was violated and the the IJ and the BIA didn't find a violation let's assume they were wrong. If that regulation was violated wouldn't we have to remand for the BIA and IJ to determine whether or not his admission of alienage was a fruit of that violation? No your honor under this court's decision in Sanchez v. Sessions a you can assume prejudice is presumed where a regulation. Not in a non-constitutional not for a regulatory violation it's presumed for a constitutional violation. I'm asking you to focus simply on the regulatory violation. Wouldn't you have to go show prejudice? When the regulatory violation is one whose compliance is required by the Constitution it does require termination. Yes and you and I you and I are talking past each other so let me be more explicit. Let me ask you to assume that there was probable cause to arrest but they violated the regulation by failing to get a warrant. Under that circumstance wouldn't we have to send it back so that so the issue of prejudice would be addressed? Your honor I think that we've also established even if we're not presuming prejudice I think that we have also established that there is actual prejudice here. That the panel may find it appropriate to remand to have that question considered in the first instance by the agency. Well here let me tell you why I'm asking the question. I'm not sure that it's clear that the I think you've got a great argument that the statement of alienage is the is the fruit of the arrest. It's it's not clear to me that that's true as a matter of law. Isn't it isn't that a factual inquiry? Your honor I think the the it is true that the second constitutional violation where he was arrested without probable cause is more directly related to the admission. Right and if you say if you establish the constitutional violation you would not have to show prejudice. I understand that. I'm just asking you to assume that you haven't established a constitutional violation but merely a regulatory one. And it seems to me you have. Under those circumstances what should we do? Your honor I this court's case is that this court's decision in Sanchez versus Sessions held that in a case where a regulation and that dealt with the regulations under 8 CFR 287 287.8 and it found that they were constitutionally required. I understand and you and I are talking past each other. I understand your argument that that that there that there was a violation of the Constitution here but I don't think the Constitution requires an arrest warrant under these circumstances. It may require probable cause but it probably doesn't require an arrest warrant. So let's assume it's only the regulation that requires a warrant. Your honor the regulation has an exception for where there is probable cause and there's been a determination that that the non-citizen is likely to escape. I want to deviate from this a little bit because it's not clear to me from looking at the record that ICE didn't know the alienage before any of this occurred. So let's just assume for a moment that they knew perfectly well that your client was not a US citizen was here improperly. They were just looking for him. If that's the case what would be suppressed? Your honor the the government has not submitted any documents any evidence to meet their burden of establishing by clear and convincing evidence Mr. X Trump alienage is not directly derived from his admission on April 29th 2014. They've submitted evidence that is that relates to that and in fact they've submitted evidence that establishes that they didn't know who he was or where he was from before that because the only evidence that they have in support of their probable cause to arrest him which is does not constitute proper probable cause is a records check which refers to the fact that a Mr. Alexander Cruz Ramirez was voluntarily returned to Mr. X Trump or a voluntary return to Guatemala. Well that's that's that's not exactly that's not exactly true. It may not be enough but it's not exactly an exactly true statement. They say we learned beforehand that this gentleman had been convicted for the fifth time I think a fourth time of DUI. We made a records check and determined that he was in the country illegally. The record that was later produced may or may not support that but they do say they made a record check beforehand and determined he was in the country illegally and the record that they later produced did have his identification number and date of birth did it not? Related to his criminal arrest for the DUI it did your honor. Right and the internal the 213 the reference to the other person the record that they had in the about the the other name if you will didn't have your client's date of birth and identification number didn't it? The identification number was assigned to Mr. Ixtchop after his arrest on April 4th on April 29, 2014. Okay what about date of birth? Mr. Cruz Ramirez and Mr. Ixtchop Perez have the same date of birth which is a possible explanation for how the two records came to be associated with each other. They had before did not provide any information about the alienage of your client? I'm sorry your honor I missed the beginning. Are you saying that the records and the information that I said before the arrest did not have any information on there about the alienage of your client? They found out exclusively from talking to your client? Yes your honor that is correct and they have since submitted evidence relating to my client's alienage but all of that is derived from the admission after his improper arrest on April 29, 2014. They went to the house just because they thought it would be fun to do that they didn't think he was an alien? Your honor it goes back to the U.S. visit database connection what the record is completely missing is any information about how Mr. Ixtchop's name and identity came to be associated with the voluntary return to Mexico of Mr. Cruz Ramirez? I understand that this is great cross-examination of what they knew at the time but the before we went to arrest him we made a records check and we determined that he was an alien in fact he is nobody disputes that he is. I'm getting back to Judge Ezra's question in the previous argument let's assume we suppressed this and we sent it back and your client were called to the stand in a civil proceeding and the government said to where are you a native of and were you lawfully admitted to the United States? If he takes the fifth that's evidence that he wasn't and if he admits and if he says the fact we all know to be true he was so what are we seeking to gain here? Your honor with all due respect that that is a question that is not before this court right now if his alienage is submitted there would be a if his alienage were suppressed there would be a factual question as to whether or not the government could sustain it without his admission. The probable cause determination well I understand that and I understand there's on this record they may not be able to sustain it without his admission. My question is if we send it back isn't it absolutely certain as a matter of of fact that they will establish his alienage? Your honor I it is I do I would not agree that it is and I would independently note that this panel can terminate for the regulatory violations and it wouldn't be back sent back at all under Sanchez versus Session. I'd also like to note that there's evidence in the record uh and it and and in. Stop for a second let's assume we terminated couldn't they reinstitute? They could try your honor absolutely. So under under the circumstance I'm talking about I'm trying to figure out if if look it makes sense when the when the agency violates its regs to to call them to account and punish them. I'm trying to figure out what your client gets out of this. Your honor the if they were to try to the the question of what would happen next is is is there's a lot of speculation about it and it it doesn't legally bear on what the proper remedy is for the violations that occurred in this case. And if I can go back to the probable cause determination that relies on U.S. visit as the central district of California found after a seven-day trial the databases that ICE relate relies on are erroneous from 30 to 42 percent of the time and I. Is there any evidence in this case that they're erroneous? Is there any evidence that they erroneously determined that let me finish you can answer. Is there any evidence that your client that the ICE erroneously determined through this they say they did a records check and determined your client was a an alien. Is there any evidence that they were mistaken in that determination? The question isn't whether they were wrong about what about whether he was an alien. The question is whether it was sufficient to sustain probable cause when the database that is wrong so frequently gave them a record that on its face does not apply to Mr. Ikshaw. I understand your I'm asking a very and your argument is terrific. You're a very good lawyer. Your argument is terrific. It's well done in the briefs. You may prevail on it. I'm asking a very specific question and I think it is a yes or no answer. Is there any evidence in this record that your client is not an alien? I do believe that that is not a relevant question. You are an excellent lawyer. You might even be a better member of Congress because you're very good at not answering that question. I do think I mean and the reason that I want to refocus the panel's attention is because I don't think that the answer to that question is determinative of my arguments. The argument is that they entered that Cecilia's consent was invalid and that violates the regulation and the Fourth Amendment and that their probable cause was insufficient to carry forward an arrest that also violates the Fourth Amendment and the regulatory violation. I think you made that point and your time is up so we thank you very much. We'll now hear argument from Mr. Yosa from the Department of Justice and I think you're by phone, right? Yes, your honor. Thank you. May it please the court, you know, we use this for the government. Kind of jumping into I think what Judge Hurwitz was going with the idea of remedy in this case and I think that kind of goes to why there's limited application of the exclusionary rule in removal proceedings. There is that notion that as Lopez Mendoza indicated that a removal proceeding is intended to provide nothing more than a streamlined determination of eligibility to remain in the country. That's why even in situations where there are violations of the Fourth Amendment that's insufficient as your honors have discussed, there needs to be a showing of egregiousness. There's also a requirement that the government abide by its own regulations, correct? Yes, your honor. Okay, there's a regulation here that rather clearly to me requires that you get a warrant under these circumstances. It's not like there was any exigency here. They plan to go out to his house, they look for him all day, they made a records check according to them beforehand. So let's assume you violated that regulation. Isn't that a sufficient basis for us to grant the petition? Your honor, what specific, is it making an arrest without a warrant if there's reason to believe that the person is unlawfully present? The reg requires a warrant in the absence of some exigency. I'm not warning it correctly. Some reason to think that he might flee or something else. You didn't get a warrant, had all day to get a warrant. You can get a warrant in seven seconds in my experience. That violates the regs. Why isn't that a sufficient reason for us to grant the petition? Well, your honor, if we're taking the premise of the fact that they did violate that regulation, if that's how you're claiming of your question, then I think it would be need to grant the petition in order to send it back, wouldn't we? Yeah, in that case, if there is the idea, if just based on the premise of your question, then yeah, if that violation, then it would be okay. Now here's my question. Doesn't that reopen the proceedings entirely in front of the IJ? In other words, if we did that, then with respect to the alleged fourth amendment violation and entering into the house, I suppose you could call the officers who could say, look, I told you, you know, our ICE status was apparent. It was on the front of our jerseys. You could ask, the judge could consider whether the sister was credible or not credible. You could explore further what they knew before they went to arrest. So I'm trying to figure out if we have to grant the petition and remand anyway, whether or not we should ask for a more fulsome discussion of those issues on remand by either the IJ or the BIA. Well, your honor, this kind of falls under the matter of Barsina's case where the nature of how the petitioner bears the burden of demonstrating that the evidence should be excluded, and they have to present a prima facie case of, for example, an egregious constitutional violation. If they were... No, not just a constitutional violation, a regulatory violation. That's why you and your colleague, and I don't blame you. I love to argue about the constitution too, but I'm saying assume no constitutional violation just for purposes of my discussion. Once we find the regulatory violation, and I think there is one, and have to send it back for a determination of prejudice because nobody ever addressed that, why not then ask the agency to make a complete record on all these other issues? Well, I think you're right. My point from discussing kind of the Fourth Amendment, the way that the Fourth Amendment are handled is at that point, if a violation was demonstrated of the Fourth Amendment, the government has the opportunity to rebut that determination. So I think maybe within the regulatory scheme, it'd the same sort of situation where then the DHS would have the opportunity to present that. I'm asking a housekeeping question because this case presents a bunch of interesting issues, but it seems to me, I may be wrong, and you can tell me why I'm wrong, rather clear that this regulation was violated. It also seems to me rather clear that nobody addressed whether or not prejudice resulted from that violation of the regulation. The rest of the record is really unclear, as Judge Smith's questions and mine, I think, demonstrated, and we would be greatly aided by a clearer record. So why don't we, why shouldn't we just remand because of this regulatory violation, point out, judge wants to have an evidentiary hearing, that's fine, that questions about consent and what the officers did beforehand aren't clearly established on this record because it was simply done without an evidentiary hearing, and then we ought to have one and get a record. What's wrong with that? Well, that would be the case if that was, if the finding of a violation, I guess I take this opportunity to disagree that there was indeed a violation of that regulation. Okay, so tell me why there wasn't. Well, the officer are permitted to arrest someone without a warrant if they have reason to believe the person is unlawfully present in the United States, they have reason to believe here that he was, wasn't, and I would note that the individual was apprehended by what was described in the I-213 as the ICE fugitive team, and this was based off of, they determined that the petitioner who had a criminal, extensive criminal history, that this individual would, would, was unlawfully present and was, it was necessary to apprehend him. I think that they, you know, let's assume that he was unlawfully present. Judge Smith. This occurred before the arrest? What do you add, please? Review of the records that were in the record, is it clear that a determination was made that this particular person was in fact an alien? What I gathered was there's some confusion about the identity of the people that are saying birthdays and so on, but there was some confusion. If it's clear that they knew before they went to the house that he was an alien, then the issue is clear. Ms. Fredlund is arguing about maybe he goes away because they already had probable cause to arrest him. But what's your best evidence in the record that they knew absolutely that this man was an alien? Well, specific to the I-213, the narrative indicates that the officers were tasked to look at the following address and that's where they went to. And that information was obtained after the record check, which identified him as someone who had come up as someone who was unlawfully present. So that's where that comes from. I know the, the, the, the 113, I think that maybe was checked afterwards, but where, where in advance of the arrest, did the ICE determine that this man was an alien and needed to be arrested? I think the I-213 identified that there was a record check conducted and that record check, based on their understanding of that record check, that he was unlawfully present. And it was that they say to that 1997 voluntary return. Well, it seems like we've got the cat chasing his tail here. She, the counsel for the petitioner suggests that, as I understand it, that a warrant was needed here. You say that they had information, a gathering that you said in response to Judge Smith's question, that they had information beforehand that he was an alien and not only an alien, with a criminal record. So I presume you're suggesting that they didn't need a warrant. And then we're back to Judge Hurwitz again, where the question is whether the regs required him or them to get the warrant. And of course, this freedman argues it's a constitutional issue. And so it seems to me like the record is at a point where remand would give the proper immigration authorities an opportunity to clear the record. I mean, where am I missing something here? Well, Your Honor, I think it's important to take a step back and understand that, based on everything that happened during the petitioner coming to the attention of ICE, going to his last known address, and then arresting him when they discovered his location. At the end of the day, the agency here conducted the record check and everything like was spot on. They were accurate that the individual was unlawfully present. So the agency here and... Let me read you the reg. The reg is very specific. It's 8 CFR 287.8, subsection C, subsection 2, subsection I. But it's all in the, you know, it's identified in the briefing. It says, an arrest, a warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained. I find no evidence in this record that this Mr. Ikschop was likely to escape before a warrant could be obtained. It took a long time to get to where he was. They knew when they went out to get him, where he lived. He's been in the country for more years than he was entitled to do, probably. He's never, he's been convicted a bunch of times in court. No, he showed up for his appearances. What evidence is there in this record that would give an immigration officer any reason to believe that he was likely to escape before a warrant could be obtained? I mean, without trying to put a, put ourselves in the shoes of the law enforcement officers, the fact that the individual had an extensive criminal history, I think five convictions, I think that might have brought the, that as individuals with criminal histories, criminal aliens are prioritized in terms of, for enforcement. They're prioritized for arrest. And I'm granting you for purposes of this question that you had ample reason to think he was an alien and that you knew he'd been convicted of DUI, I think four or five times before. One of them may have occurred after, so maybe it's only four times. But he'd been in the country for a long time. He had a home. His wife was giving birth at a hospital. Put aside reason to think that he's going to flee before you can arrest him. And there's plenty of time to get a warrant. So what's the excuse for not getting one? I can't put myself in their shoes, but at the same time, again, that's kind of stepping into the position of law enforcement officers in executing their duties in such a way that I don't know we're able to do that in this situation. Like they based it on the fact that he was a known alien with an extensive criminal history. And that was what motivated them to arrest and apprehend him. That was the determination they made. That does not answer Judge Hurwitz's question. If they had that information before you said, why could they not have gotten a warrant based upon that, you know, based on their probable cause and just gotten arrested? And all they would have obtained a warrant in this situation. I feel that with the facts we have before us, this isn't a perfect situation, but it's also not a situation that would warrant suppression of evidence or exclusion of evidence in this case. What's the reason why the regulations cited by Judge Hurwitz did not have to be complied with? Well, the thing is that I disagree that it wasn't complied with. I understand that. Well, they didn't have a warrant, but they had reason to flee. And that was their determination that they had reason to flee based on the fact that it's complied with that record at all about his fleeing. Nothing. Where is it? Where is it in the record? I agree, Your Honor. There isn't any information addressing that. It's based on the determination by the ICE agents in concluding that this individual should be apprehended. And they specifically in the I-213 cite his criminal history as why he was tasked, why the ICE fugitive team was tasked with specifically apprehending him. So I will state that. Sorry, go ahead. Counsel, I understand your argument is that we shouldn't be putting ourselves in the position of law enforcement. And I couldn't agree with you more if we had a circumstance where some exigency was in the record. And we were trying to second guess the law enforcement officers as to whether or not that exigency was sufficient or insufficient. I think the point that was made by both of my distinguished colleagues was that there was absolutely no exigency in the record. Now, maybe there is an exigency. And that would be why you would want to remand so that somebody could address it. Some law enforcement officer could say, look, this guy had this kind of a record and that kind of a record. And we were absolutely convinced that he was heading out the door. But we don't have anything like that here. And you want to have us presume or imply or suggest that that must have been it based on his record. But I don't know that we can do that. Do either of my colleagues have additional questions for Mr. Yosef? His time is up. But if you have additional questions, we can proceed. Yeah, I have one more question, Judge Smith. And I want to ask it to be fair to the government because I want to ask it to counsel for petitioner too. It seems to me the reason I'm harping on this warrant issue is that if the agents had gone to a neutral magistrate to get a warrant, we would have a record about what they knew at the time and where they'd gotten it from. And it seems to me that this violation is what makes this case on its facts difficult. And so I want to ask the government to respond to that. It's not just a technical violation. Had they gone and gotten a warrant, almost all the other issues would go away. We would know what probable cause they had at the time and what they knew when they went to his house and etc. But we don't know that in this case, because we don't have a record before a magistrate. So I'd ask the government to respond to that. And for the petitioner, I'd ask isn't that exactly the reason why we ought to send it back for further proceedings rather than terminate? Well, Your Honor, I do take that point. And I understand that it would have been a much better case here for us if the record did include that warrant and that explanation on the part of Bison why they pursued him. And I think what we have here before us in the record is they provide what they identified as relevant in terms of justifying his arrest and apprehension, which is identifying with a criminal alien, an individual who was known to be unlawfully present and had a criminal history. I think that's what would address that. But I think it also is important to try to take a step back again that at the end of all this, the petitioner was in fact an individual who admitted that he was unlawfully present. And that is an issue that's not in dispute. He admitted it in remote proceedings and at the time of apprehension. And I think that's why in terms of applying the exclusionary rule in these proceedings is generally done in limited situations. And I don't believe this is a situation that would warrant exclusion of that evidence. And therefore, that's why the petition should be denied. Thank you, Your Honors. Thank you. Now, Ms. Friedman has used up her time. But do either of my colleagues have questions for her? I think you said, Judge Hurwitz, that you did have a question for her. I did. And it was the point that the government brought up at the end. Let's assume that his admission is suppressed, his admission to police officers. What do you do with your response to the NTA that says, isn't there an admission, a judicial admission also? Your Honor, there are rules about when the admission that he made in any admissions he arrived from the prejudice from the initial arrest. I would like to respond briefly to a couple of things that my friend argued. First of all, I would submit that the record shows that the records checks performed was the record that we have before us in front of U.S. Visits, from the U.S. Visit database. I think that that is the information that they had. And because there were constitutional violations here, I would invite this court to terminate, not send back for any more evidentiary hearings. There was unlawful conduct by the agency here, and this panel cannot endorse it. Your view is that a remand is an endorsement? A remand for factual findings is an endorsement? No, Your Honor. I would argue that finding that the violations of the regulations do not warrant termination under Sanchez v. Sessions, I argue that they do. My friend argued that the I-213 is the evidence that's available in the record on alienage. The case law says that an I-213 is presumptively reliable only when that presumption is overcome when there is evidence to the contrary. And here we do have evidence to the contrary. We know what the record check showed. The record check showed that someone by a different name was deported to a different country. And if I may also go back to the question about what case law I have about the search I'm leading. No, I must say you're an able lawyer. You, John, from our having colleagues ask questions to re-initiating the argument. Let me ask either of my colleagues have additional questions for Ms. Friedman. I do not. I do not. We thank you both for your arguments. You're both fine lawyers. We appreciate your help in this case. And the case just argued is submitted, and the court stands in recess for the day. Thank you. This court stands in recess, is adjourned.
judges: M. Smith, Jr., Hurwitz, Ezra